UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CIVIL ACTION NO.  5:08CV-00152-JHM

WILLIAM E. HOGANCAMP, MD, and
MARK SEXTON, RRT & RPSGT          PLAINTIFFS/COUNTER-DEFENDANTS

v.

JAN CALLAWAY, TERRY J. CALLAWAY,
T & J CALLAWAY, LLC, and
TD PROPERTIES, LLC                DEFENDANTS/COUNTER-PLAINTIFFS
                                  THIRD PARTY PLAINTIFFS

v.

SLEEP SOURCE TENNESSEE, LLC,
BEN T. HOGANCAMP,
TIDEWATER TRUST
c/o BEN T. HOGANCAMP, Trustee     THIRD PARTY DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants/Counter-Plaintiffs and Third Party Plaintiffs, Jan Callaway, Terry J. Callaway, T & J Callaway, LLC, and TD Properties, LLC's, Motion to Dismiss [DN 24].  The Plaintiffs/Counter-Defendants have responded [DN 27].  This matter is now ripe for adjudication.  For the following reasons, Defendants/Counter-Plaintiffs' Motion to Dismiss is denied.

**I.  BACKGROUND**

Plaintiffs William Hogancamp and Mark Sexton, citizens of Kentucky, own and operate sleep labs in Paducah and four other locations.  In the summer of 2007, Defendants Jan and Terry Callaway, citizens of Tennessee, contacted Plaintiffs at Sleep Source and sought their advice and partnership in opening a new sleep lab in Collierville, Tennessee.  Shortly thereafter, the parties agreed to partner in the Collierville lab.  This agreement was reduced to writing in September 2007,

and signed by members of Sleep Source Tennessee, LLC, ("Sleep Source Tennessee") and T & J Callaway, LLC ("T&J Callaway"). William E. Hogancamp, Mark Sexton, Ben T. Hogancamp and Tidewater Trust are all members of Sleep Source Tennessee and each signed the agreement on behalf of the limited liability company. Jan and Terry Callaway are members of T & J Callaway, LLC, and Terry Callaway signed the agreement on behalf of the limited liability company.

The parties moved forward in developing the Collierville lab throughout late 2007 and 2008. In December of 2007, the parties leased property from defendant, TD Properties, LLC ("TD Properties"), which is partially owned by Terry Callaway. Each of the members of Sleep Source Tennessee and Terry Callaway executed guarantees of the obligations of the company under the lease. In the fall of 2008, newly adopted medicare regulations were implemented. Plaintiffs allege that these new Medicare rules and regulations make the Collierville lab project economically unwise. Plaintiffs assert that termination of the agreement is appropriate under the terms of the contract that allows for the parties to withdraw from the venture if gross profits are insufficient to maintain a profitable enterprise. (Complaint at ¶ 18.)

On September 22, 2008, Plaintiffs filed this declaratory judgment action seeking a declaration that neither party will be liable for damages against the other for termination of the agreement due to the changes in the Medicare rules and regulations. Plaintiffs also seek the Court to declare that the individual Plaintiffs are not bound on the lease and that the individual Plaintiffs are not responsible for Defendants' economic losses at the Collierville, Tennessee, facility.

Defendants filed an answer and a counterclaim and a third-party complaint for declaratory judgment and for money judgment for breach of contract. Defendants named Sleep Source Tennessee, LLC; Ben T. Hogancamp; and Tidewater Trust, Ben T. Hogancamp as trustee, as Third-

Party Defendants. Defendants asserted claims for breach of the agreement, the lease, and the guarantees seeking specific performance and damages. Defendants also asserted a claim for contribution and indemnity against William E. Hogancamp, Mark Sexton, Ben T. Hogancamp, and Tidewater Trust.

Defendants now move the Court to dismiss the case for lack of subject matter jurisdiction arguing that complete diversity of citizenship does not exist as required by 28 U.S.C. § 1332. Alternatively, Defendants argue that even if complete diversity of citizenship were to exist, the Court should abstain from exercising jurisdiction under the Burford Abstention Doctrine.

## II. JURISDICTION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," American Telecom Co. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," Schultz v. General R.V. Center, 512 F.3d 754, 756 (6th Cir. 2008). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." Gentek Bldg. Prods., Inc. v. Steel Peel Litig. Trust, 491 F.3d 320, 330 (6th Cir. 2007). "If the court determines at any time that it lacks subject matter jurisdiction, the

3

court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### B. Discussion

This declaratory judgment action was brought in federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Diversity jurisdiction requires that the amount in controversy exceed $75,000 and be between "citizens of different states." 28 U.S.C. §1332(a)(1). "It is axiomatic that there must be complete diversity between the parties of an action to support diversity jurisdiction." United States Fid. & Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1089 (6th Cir.1992) (citing Smith v. Sperling, 354 U.S. 91 (1957)). Complete diversity exists when "all of [the parties] on one side of the controversy are citizens of different states from all parties on the other side." City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941). In this case, the named plaintiffs are citizens of Kentucky and the named defendants are citizens of Tennessee.

Defendants move the Court to dismiss this action for lack of subject matter jurisdiction. Defendants argue Sleep Source Tennessee must be named as a plaintiff and is a real party to the controversy requiring its citizenship be considered in determining diversity. Defendants allege Sleep Source Tennessee is a Tennessee limited liability company and is therefore a citizen of Tennessee. Defendants contend that once Sleep Source Tennessee is properly named as a plaintiff complete diversity will be destroyed requiring the Court to dismiss this action for lack of subject matter jurisdiction.

The Court disagrees. The citizenship of a limited liability company is determined based on the citizenship of each of its members. Delay v. Rosenthal Collins Group, LLC, ___ F.3d ___, 2009 WL 3425687, *1 (6th Cir. Oct. 27, 2009)("[t]he general rule is that all unincorporated entities-of which a limited liability company is one-have the citizenship of each partner or member"); Carden

v. Arkoma Assocs., 494 U.S. 185, 187-92 (1990); Homfeld II, LLC v. Comair Holdings, Inc., 53 Fed. App'x 731, 732 (6th Cir. 2002). Accordingly, "[w]hen diversity jurisdiction is invoked in a case in which a limited liability company is a party, the court needs to know the citizenship of each member of the company." Delay, 2009 WL 3425687, at * 2. It has been alleged there are four members of Sleep Source Tennessee: William E. Hogancamp, Mark Sexton, Ben T. Hogancamp, and Tidewater Trust. Plaintiffs' complaint alleges that William E. Hogancamp and Mark Sexton are citizens of Kentucky. Defendants' answer and third-party complaint alleges that Ben T. Hogancamp and Tidewater Trust are both domiciled in Kentucky and maintain principal places of business in Kentucky. Based on the record, the Court finds Sleep Source Tennessee is a citizen of Kentucky since all its members are citizens of Kentucky. Even if the Court were to treat Sleep Source Tennessee as a plaintiff,[1] complete diversity would not be destroyed. Therefore, dismissal for lack of subject matter jurisdiction is improper.

### III. BURFORD ABSTENTION DOCTRINE

Alternatively, Defendants argue that even if complete diversity of citizenship were to exist, the Court should abstain from exercising jurisdiction under the Burford abstention doctrine. Burford v. Sun Oil Co., 319 U.S. 315 (1943). Specifically, Defendants argue that because this lawsuit involves contractual disputes regarding contracts to be performed in the State of Tennessee, timely and adequate state court review is available to the parties in Tennessee, and this Court should decline to interfere with such a review.

---

[1] For purposes of determining whether diversity jurisdiction exists, the Court has treated Sleep Source Tennessee as a plaintiff. However, a determination of the real party in interest in this case could not be made at this time. The parties have not addressed the applicable Tennessee law as it relates to the ability of a limited liability company or its members to sue or be sued.

"The Burford doctrine provides that where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" Adrian Energy Associates v. Michigan Public Service Com'n, 481 F.3d 414, 423 (6th Cir. 2007) (internal citations omitted); see also Thomas v. Wachovia Bank, N.A., 2009 WL 3210701, *2 (W.D. Ky. October 2, 2009); Warf v. Board of Elections of Green County, Ky., 2009 WL 530666, *2 (W.D. Ky. March 3, 2009). "[T]he power to dismiss recognized in Burford represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 726 (1996)(citations omitted)).

Application of the Burford abstention doctrine is not appropriate in this case. There is no indication that the Court's exercise of jurisdiction would likely "interfere with the proceedings or orders of state administrative agencies." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989). Nor do the issues raised in the present case constitute difficult questions of state law that involve important policy issues. See Thomas, 2009 WL 3210701, at *2. Rather, this case simply involves contract interpretation which is regularly handled by federal courts in diversity actions. Accepting Defendants' argument would require the Court to abstain from most diversity cases. For these reasons, the Court denies Defendants' motion to dismiss on this ground.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [DN 24] is **DENIED**.

cc: counsel of record