UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CIVIL ACTION NO.  5:08CV-00152-JHM

**WILLIAM E. HOGANCAMP, MD, and**
**MARK SEXTON, RRT & RPSGT**            **PLAINTIFFS/COUNTER-DEFENDANTS**

**v.**

**JAN CALLAWAY, TERRY J. CALLAWAY,**
**T & J CALLAWAY, LLC, and**
**TD PROPERTIES, LLC**                  **DEFENDANTS/COUNTER-PLAINTIFFS**
                                        **THIRD PARTY PLAINTIFFS**

**v.**

**SLEEP SOURCE TENNESSEE, LLC,**
**BEN T. HOGANCAMP,**
**TIDEWATER TRUST**
**c/o BEN T. HOGANCAMP, Trustee**       **THIRD PARTY DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Third Party Plaintiff, TD Properties, LLC, for a judgment as a matter of law regarding the award of damages for breach of the lease agreement [DN 80] and on a motion by Third Party Plaintiff, TD Properties, for an award of attorneys' fees and expenses against Sleep Source Tennessee, LLC, William E. Hogancamp, Mark Sexton, Ben T. Hogancamp, and Tidewater Trust [DN 79].

### I.  BACKGROUND

On September 7, 2007, Sleep Source Tennessee, LLC, entered into an agreement with T & J Callaway, LLC, to develop a sleep lab in Collierville, Tennessee.  Paragraph 18 of the Sleep Lab Agreement provided as follows:

> **Personal Guarantees:** The parties hereto have each agreed to provide personal guarantees by the principals of the Lease Agreement for the sleep lab facility in Collierville, TN.  In the unlikely event that the lab should not be financially viable

> and a decision should be made to discontinue its operation prior to the end of the lease term, it is understood and agreed that each party hereto (and the individuals associated therewith) shall be responsible for only one-half of any obligations accruing under the lease agreement (during and after mitigation efforts by the Landlord).

(Sleep Lab Agreement at ¶ 18.) On December 7, 2007, Sleep Source entered into a Lease Agreement with TD Properties for the commercial space where the sleep lab facility was to be developed. As contemplated by the Sleep Lab Agreement, William Hogancamp, Mark Sexton, Ben Hogancamp, Tidewater Trust, and Terry Callaway executed personal guarantees of the obligations of Sleep Source under the Lease Agreement.

On September 22, 2008, Plaintiffs filed a declaratory judgment action against Defendants seeking a declaration that neither party will be liable for damages against the other for termination of the Sleep Lab Agreement due to the changes in the Medicare rules and regulations. Plaintiffs also asked the Court to declare that the individual Plaintiffs are not bound on the lease and that the individual Plaintiffs are not responsible for Defendants' economic losses at the Collierville, Tennessee, facility. TD Properties filed its answer, counter-claim, and third-party complaint seeking damages against Sleep Source, William Hogancamp, Sexton, Ben Hogancamp and the Trust for breach of the Lease Agreement and their personal guarantees.

A trial was held in the matter beginning on March 26, 2012. At the close of proof, TD Properties moved for entry of judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) on its claim for breach of the Lease Agreement. The Court denied the motion finding questions of fact regarding which party first breached the Lease Agreement. The jury concluded that Sleep Source, William Hogancamp, Sexton, Ben Hogancamp, and the Trust had breached the Lease Agreement and awarded damages in favor of TD Properties in the amount of $172,536.80.

TD Properties now files a renewed motion for judgment as a matter of law regarding the award of damages for breach of the Lease Agreement. TD Properties also filed a motion for attorneys' fees and expenses.

## II. MOTION FOR JUDGMENT AS MATTER OF LAW

TD Properties moves for a judgment as a matter of law regarding the amount of damages for breach of the Lease Agreement. TD Properties argues that when it awarded damages for breach of the Lease Agreement, the jury disregarded the instructions of the Court and limited the damage award to half of the total rental obligations prior to reduction for mitigation.[1] TD Properties requests

---

[1] During the trial of this matter, the jury heard a significant amount of evidence regarding both the Sleep Lab Agreement and the Lease Agreement. In an effort to avoid confusion, the Court instructed the jury regarding damages in part as follows:

> Additionally, during this trial, you have heard evidence regarding the breach of a separate agreement, the Sleep Lab Agreement, which was between T & J Callaway, LLC, and Sleep Source Tennessee, LLC. TD Properties, LLC, is a separate entity under the law from T & J Callaway, LLC, and TD Properties, LLC, was not a party to the Sleep Lab Agreement.
> You have also heard evidence that Terry Callaway and Jan Callaway are members of both T & J Callaway, LLC, and TD Properties, LLC. However, the fact they are members of both limited liability companies is not to be considered by you in determining the amount of damages due the corporation, TD Properties, LLC, as a result of the breach of the Lease Agreement. In other words, you are to determine the amount of damages due to TD Properties, LLC, without regard to the ownership of the corporation.
> Furthermore, you have heard evidence regarding certain provisions of the Sleep Lab Agreement regarding sharing of rental payments between T & J Callaway, LLC, and Sleep Source Tennessee, LLC. You should not consider any of the provisions of the Sleep Lab Agreement in determining the amount of damages to award TD Properties, LLC, as a result of the breach of the Lease Agreement. If there is to be any sharing of liability between T & J Callaway, LLC, and Sleep Source Tennessee, LLC, those matters will be decided in a different proceeding at a later time, and should be of no concern to you in deciding the amount of damages due TD Properties, LLC.

(Jury Instructions at 8, DN 73.)

the Court set aside the original award of damages reached by the jury in response to Interrogatory No. 3 in the amount of $172,536.80 and direct judgment as a matter of law for damages in the amount of $345,073.59, less the $27,000 the jury determined TD Properties could reasonably have mitigated.

Fed. Civ. R. 50(b) provides that judgment as a matter of law may be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 543 (6th Cir. 2008) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000)); see also Fed. Civ. R. 50(b); Bendix Commercial Vehicle Systems, LLC v. Haldex Brake Products Corp., 2011 WL 94530, * 1 (N.D. Ohio Jan. 3, 2011).  In reviewing such motions, the Court views the evidence in the light most favorable to the non-moving party and gives him the benefit of all reasonable inferences. It does not weigh the evidence, evaluate the credibility of the witnesses, or substitute its judgment for that of the jury. Tarrant Service Agency, Inc. v. American Standard, Inc., 12 F.3d 609, 613 (6th Cir. 1993); Adam v. J.B. Hunt Transp., Inc., 130 F.3d 219, 231 (6th Cir.1997)(abrogation on other grounds)(interpreting Kentucky law in same manner); Hometown Folks, LLC v. S & B Wilson, Inc. 643 F.3d 520, 530 (6th Cir. 2011)(interpreting Tennessee law in same manner).

After a review of the record, the Court declines to overturn the jury's verdict.  The record reflects that while TD Properties claimed $345,073.59 in damages under the Lease Agreement, the jury also heard evidence that Sleep Source invested approximately $173,000.00 in the build-out of the leased property, that these improvements remain on the leased property, and that TD Properties has the benefits of those improvements.  Accordingly, a reasonable jury could have reduced Sleep

Source's rental obligations by the amount of the build-out. While the Court is aware that the exact amount of the jury verdict under Interrogatory No. 3 is half of the total rental obligations TD Properties claims, "federal courts generally presume the jury will follow the instructions correctly as given." Barnes v. Owens-Corning Fiberglass Corp., 201 F.3d 815, 822 (6th Cir. 2000). This presumption "can only be overcome where there is an 'overwhelming probability' that [the jury] was unable to do so." United States v. Vining, 224 Fed. Appx. 487, 494 (6th Cir. 2007)(citation omitted). Considering the evidence presented to the jury in the light most favorable to the non-moving party, the Court finds that there is a legally sufficient evidentiary basis for a reasonable jury to find that TD Properties incurred damages in the amount of $172,536.80.

For these reasons, the Court denies TD Properties motion for judgment as a matter of law with respect to damages.

### III. ATTORNEYS' FEES AND EXPENSES

Under the Lease Agreement between Sleep Source and TD Properties, the parties agreed that in the event that TD Properties should institute any action or proceeding against Sleep Source to recover sums due under the Lease, Sleep Source agreed "to pay Landlord, upon demand, all costs, expenses, and the reasonable attorneys' fees incurred by Landlord . . . ." (Office Lease Agreement, ¶ 20.03.) As discussed above, William Hogancamp, Mark Sexton, Ben Hogancamp, Tidewater Trust, and Terry Callaway executed personal guarantees of the obligations of Sleep Source under the Lease Agreement. Each of the individual guarantees provided:

> The undersigned agrees that if the Landlord shall employ counsel to present, enforce or defend any or all of Landlord's rights or remedies hereunder, or defend any action brought by any guarantor, then, in any such event, the undersigned shall pay any attorneys fees and expenses incurred by Landlord.

(Individual Guarantees, ¶ 5.)

Kentucky law follows the American Rule that attorneys' fees are not recoverable unless expressly provided for in statute or contract. Dulworth & Burress Tobacco Warehouse Co. v. Burress, 369 S.W.2d 129 (Ky. 1963). In Kentucky, it is a general rule, "that, with the exception of a specific contractual provision allowing for recovery of attorneys' fees or a fee-shifting statute, . . . each party assumes responsibility for his or her own attorneys' fees." Aetna Casualty & Surety Co. v. Commonwealth of Kentucky, 179 S.W.3d 830, 842 (Ky. 2005) (quotations marks omitted) (citing Nucor Corp. v. General Electric Co., 812 S.W.2d 136 (Ky.1991)). TD Properties contends that both the Lease Agreement and the Individual Guarantees provide for the recovery of its attorneys' fees and litigation expenses. In conjunction with this claim, TD Properties provided an itemized list of the fees and expenses accrued during the defense of the original claims and prosecution of its counterclaim and third party claim. (See Affidavits of John Horne and C. Thomas Miller.)[2]

In their response, Sleep Source Tennessee, William Hogancamp, and Mark Sexton argue that three factors counsel against awarding attorneys' fees in this matter: (1) the breach was neither intentional or willful; (2) if the parties had gone forward with the project, they would have exposed themselves to criminal liability under the Medicare/Medicaid kickback rules; and (3) there is no showing that the attorneys' fees are reasonable in this case. Much of their response consist of a reargument of the merits of the claims. The Court has already addressed those claims and finds it

---

[2]TD Properties seeks recovery of $23,250.00 in attorney's fees and $446.20 for expenses for the services of Mr. John Horne located in Memphis, Tennessee. The billing statements reflect that Mr. Horne charged a $200.00 hourly rate. Additionally, TD Properties requests $13,479.00 in attorney's fees and $215.90 for expenses for the services of the law firm Whitlow, Roberts, Houston & Straub located in Paducah, Kentucky. The billing statements reflect that Mr. C. Thomas Miller charged an hourly rate of $175.00 and Ms. Jennifer Green charged an hourly rate of $80.00.

improper to address them again in the present context.

The Court finds that the Lease Agreement and Individual Guarantees contain a valid provision for TD Properties' recovery of its reasonable attorneys' fees and expenses.  While Sleep Source, William Hogancamp, and Sexton argue that there is no showing that the attorneys' fees are reasonable in this case, they have failed to object to any particular itemized expense, the number of hours expended on the litigation, or the hourly rate charged by counsel.  TD Properties submits billing records to support the hours counsel worked and rates claimed.  The Court has reviewed the lodestar figure and finds the fees and expenses requested reasonable.  Accordingly, the Court finds that TD Properties is entitled to its reasonable attorneys' fees and expenses in the amount of $37,391.10.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Third Party Plaintiff, TD Properties, LLC, for a judgment as a matter of law regarding the award of damages for breach of the lease agreement [DN 80] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion by Third Party Plaintiff, TD Properties, for an award of attorneys' fees and expenses against Sleep Source Tennessee, LLC, William E. Hogancamp, Mark Sexton, Ben T. Hogancamp, and Tidewater Trust [DN 79] is **GRANTED**.  TD Properties is awarded reasonable attorneys' fees and expenses in the amount of $37,391.10.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
**United States District Court**

July 20, 2012